NUMBER 13-05-139-CV

COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG


 


BOBBY R. DOSS, Appellant,


v.


HOMECOMINGS FINANCIAL NETWORK, 

INC., ET AL., Appellees.

 

On appeal from the 24th District Court of Refugio County, Texas.


 

OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Chief Justice Valdez


 Homecomings Financial Network, Inc. and Bankers Trust Company as Trustee
(collectively referred to as "Homecomings"), appellees, brought several fraud claims and
a declaratory judgment action against Bobby R. Doss, appellant, for his actions after a
misapplication of mortgage funds. (1) Bobby responded with a general denial and a cross-
action. Homecomings filed a motion for interlocutory summary judgment. The district court
granted Homecomings's motion for interlocutory summary judgment against Doss and in
a final judgment awarded Homecomings monetary damages, declaratory relief, and
attorney's fees. Bobby appeals the final judgment and raises six issues, which can be
narrowed and addressed in three. Bobby contends that the trial court erred in (1) granting
summary judgment on Homecomings's claims, (2) awarding attorney's fees to
Homecomings, and (3) dismissing his cross action. We affirm in part, reverse in part, and
remand in part. Tex. R. App. P. 43.2, 43.3.

I. BACKGROUND

A. Factual Background

 In October 1997, Bobby and Charlotte Doss, then husband and wife, purchased two
pieces of real property in Refugio County, Texas. The first piece of property was financed
by a note ("Note 1") for $38,000 issued by Homecomings and secured by a vendor's lien
and deed of trust upon the property. (2) The second piece of property was financed by a note
("Note 2") for $51,000 issued by Homecomings and secured by a vendor's lien and deed
of trust upon the property. (3)

 On February 28, 2000, Bobby and Charlotte divorced. According to the divorce
decree, Bobby was awarded the property secured by Note 1 as his separate property and
Charlotte was awarded the property secured by Note 2 as her separate property. Bobby
and Charlotte were to assume the debt for the property each received in the divorce
decree. 

 In October 2002, Charlotte arranged with Bank of America to refinance the property
she received in the divorce decree, which was financed through Homecomings by Note 2. 
When Homecomings received a disbursement check from Bank of America on behalf of
Charlotte for the amount of $36,449.90, it credited the funds to Note 1 instead of Note 2. 
Homecomings claims it was unaware of Bobby and Charlotte's divorce, but a title report
shows a deed from Bobby granting the property in question to Charlotte was recorded on
May 3, 2000. Thus, Homecomings mistakenly paid off Note 1, which Bobby assumed
according to the divorce decree, and issued Bobby a release of lien and an escrow account
refund of nearly two thousand dollars. The release of lien was filed with the county clerk
on November 8, 2002, although it is not clear who filed the release of lien.

 Homecomings contacted Bobby after it realized the mistake. It demanded that
Bobby (1) agree to set aside and render null and void the release of lien, (2) revive the lien
under the deed financed by Note 1, (3) refund $1,947.17 sent to Bobby from the escrow
account, and (4) give his authorization to apply the misapplied funds to Note 2 for the
benefit of Charlotte. Bobby refused to comply with the demands. Homecomings filed suit
against Bobby and Charlotte on December 9, 2002.

B. Procedural Background

 Homecomings's petition against Bobby alleges the following claims: (1) unjust
enrichment, (2) money had and received, (3) breach of express contract, and (4) breach
of implied contract. (4) Included in Homecomings's petition is a request for declaratory
judgment. In its declaratory judgment request, Homecomings asked the trial court to undo
the ramifications of its misapplication of Charlotte's funds. On May 4, 2004, Bobby filed
his first amended answer and claimed that the lawsuit was unjust. Bobby's answer
included a cross-action against Homecomings for the adverse effect the dispute had on
his credit rating. On June 17, 2004, Homecomings moved for an interlocutory summary
judgment, which was granted on November 22, 2004. A nonsuit without prejudice was filed
as to Charlotte, and a final judgment was signed on December 27, 2004.

 The final judgment orders Homecomings to recover $37,618.49, plus pre- and post-
judgment interest from Bobby, declares void the release of lien given to Bobby and filed
with the county clerk, revives Note 1, authorizes Homecomings to apply $35,671.32 that
was mistakenly paid on Note 1 to Note 2, and awards Homecomings $15,000 in attorney's
fees, with interest, plus court costs. It does not mention Bobby's cross-action.

II. DISCUSSION

A. Finality of Judgment

 By his third issue, Bobby contends that the trial court erred by not addressing his
cross-action against Homecomings in the final judgment. This issue can best be
understood as a challenge to the judgment's finality. Finality "must be resolved by a
determination of the intention of the court as gathered from the language of the decree and
the record as a whole, aided on occasion by the conduct of the parties." Lehmann v.
Har-Con Corp., 39 S.W.3d 191, 203 (Tex. 2001) (quoting 5 Ray W. McDonald, Texas Civil
Practice 27:4, at 4 (John S. Covell, ed., 1992 ed.). The summary judgment motion was
interlocutory only in that it pertained to claims against Bobby and did not attempt to resolve
any potential claims against Charlotte. We note that Homecomings did not raise any
claims against Charlotte in its petition even though she was a named defendant and the
only relief requested from Charlotte was declaratory in nature; a nonsuit with prejudice as
to Charlotte was filed shortly before the final judgment was entered. 

 We note that a final judgment was entered after the interlocutory summary judgment
was signed. The final judgment states that "[a]ll parties and issues are finally disposed of
by this Judgment." Assuming Bobby properly pleaded a cross-action, the final judgment
appears to deny it. We construe the judgment in the instant to be final and appealable
because it unequivocally expresses an intent to dispose of the case. See Lehmann, 39
S.W.3d at 206. Bobby's third issue is overruled. 

B. Standard of Review

 Bobby's first issue contends that the trial court should not have granted summary
judgment on any of Homecomings's claims. Summary judgment is a question of law.
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003). Thus, we
review a trial court's summary judgment decisions de novo. Id. at 215. 

 The standard of review for a traditional summary judgment motion is threefold: (1)
the movant must show that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law; (2) in deciding whether there is a disputed material fact
issue precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor of
the nonmovant and resolve any doubts in the nonmovant's favor. Tex. R. Civ. P. 166a(c);
Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d 643, 645-46 (Tex. 2000); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 In the instant case, the trial court did not specify the ground relied upon for its ruling. 
Therefore, the summary judgment must be affirmed if any of the theories advanced is
meritorious. Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).

C. Money Had and Received Claim

 Homecomings's claim for money had and received is an equitable action that may
be maintained to prevent unjust enrichment when the defendant obtains money, which in
equity and good conscience belongs to the plaintiff. Orgain v. Butler, 478 S.W.2d 610, 613
(Tex. Civ. App.-Austin 1972, no writ)(citing Staats v. Miller, 243 S.W.2d 686, 687 (Tex.
1951)). A cause of action for money had and received is not based on wrongdoing but
instead, "looks only to the justice of the case and inquires whether the defendant has
received money which rightfully belongs to another." Amoco Prod. Co. v. Smith, 946
S.W.2d 162, 164 (Tex. App.-El Paso 1997, no writ) (citing Greer v. White Oak State Bank,
673 S.W.2d 326 (Tex. App.-Texarkana 1984, no writ)). It is essentially an equitable
doctrine applied to prevent unjust enrichment. Hunt v. Baldwin, 68 S.W.3d 117, 132 (Tex.
App.-Houston [14th Dist.] 2001, no pet.).

 The summary judgment evidence includes a divorce decree assigning Note 1 and
the property financed by Note 1 to Bobby and assigning Note 2 and the property financed
by Note 2 to Charlotte. Also in evidence are Bank of America loan papers completed by
Charlotte so that she could refinance Note 2 and copies of the check stubs used to
refinance Note 2. Another piece of summary judgment evidence is the affidavit of Kelli
Kysela, a custodian of records for Homecomings, which states that the check from Bank
of America was applied to Note 1 instead of Note 2. A release of lien evidencing the
misapplication was filed with the county clerk. Kysela states that a demand was made on
Bobby to remedy the mistake, but no action was taken.

 Bobby did not marshal any evidence to challenge the summary judgment motion on
any of the causes of action advanced. Before the trial court, Bobby contended that
Homecomings was precluded from seeking an equitable remedy because it made a
mistake in applying Charlotte's funds to the wrong note. However, wrongdoing is not an
element in a claim for money had and received. Smith, 946 S.W.2d at 164. Moreover,
there is no evidence that Bobby materially changed his position in reliance on the
misapplication of funds, the release of lien, or the escrow account refund. Cf. Bryan v.
Citizens Nat'l Bank, 628 S.W.2d 761, 763 (Tex. 1982) ("Generally, a party who pays funds
under a mistake of fact may recover restitution of those funds if the party to whom payment
was made has not materially changed his position in reliance thereon."). 

 The record conclusively establishes that Homecomings received funds intended for
Charlotte's note, mistakenly applied the funds to Bobby's note, and that the funds in equity
and good conscience belong to Homecomings so that they can be rightfully applied to
Charlotte's note. Therefore, there is no disputed issue of material fact with regard to
Homecomings's money had and received claim. Thus the trial court could have granted
Homecomings's summary judgment based upon a claim for money had and received.
Bobby's first point of error is overruled.

D. Claims Utilizing the Uniform Declaratory Judgment Act

 Bobby argues by his second issue that the trial court should not have awarded
attorney's fees because there was a controverting affidavit questioning the reasonableness
and necessity of the fees. Bobby's second issue calls into question a more fundamental
issue. Attorney's fees are recoverable only when provided for by statute or by the parties'
agreement. Dallas Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992). 
We know that reasonable and necessary attorney's fees may be awarded in any
proceeding utilizing the Uniform Declaratory Judgment Act (UDJA) if they are equitable and
just, and that reasonable attorney's fees can be recovered on oral or written contract
claims. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.009, 38.001(8) (Vernon 1997). However,
neither Homecomings's pleadings nor the final judgment delineate which causes of action
were the basis for the award of attorney's fees. 

 Because of the parties' awkward pleading practice, our first task in deciding the
attorney's fee question is to categorize the causes of action so that we can determine the
jurisdictional basis for an award of attorney's fees. Cf. Kadish v. Pennington Assocs., L.P.,
948 S.W.2d 301, 304 (Tex. App.-Houston [1st Dist.] 1995, no writ) (holding that to
establish jurisdiction under the UDJA, a party must plead the existence of an "underlying
controversy" within the scope of section 37.004 of the civil practice and remedies code). 
A cause of action that would support the award of attorney's fees must be rooted in the
UDJA or section 38.001(8) of the civil practice and remedies code; a cause of action that
would not support the award of attorney's fees would not be rooted in the two statutes.

 The UDJA is a procedural device for deciding cases already within a court's subject
matter jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 1997);
State v. Morales, 869 S.W.2d 941, 947 (Tex. 1994); Tex. Ass'n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 444 (Tex. 1993). A litigant's request for declaratory relief cannot
confer jurisdiction on the court, nor can it change the basic character of a suit. Morales,
869 S.W.2d at 947. The pertinent statute reads:

 A person interested under a deed, will, written contract, or other writings
constituting a contract or whose rights, status, or other legal relations are
affected by a statute, municipal ordinance, contract, or franchise may have
determined any question of construction or validity arising under the
instrument, statute, ordinance, or franchise and obtain a declaration of rights,
status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)(emphasis added). 

 At first blush all of Homecomings's causes of action appear to trigger the UDJA's
jurisdiction because of the presence of notes and deeds. The instruments at the heart of
Homecomings's claims are Note 1, the deed of trust secured by Note 1, and the release
of lien. Note 1 is a promissory note, which is a written contract, between Bobby and
Charlotte and Homecomings. The mistakenly issued release of lien issued by
Homecomings cancelled the deed of trust secured by Note 1. 

 However, Homecomings's allegation of unjust enrichment and claims for money had
and received and implied contract are equitable claims that tangentially deal with the notes
and deeds in the instant case. The instruments are evidence of Bobby's alleged
wrongdoing and unjust enrichment, but Homecomings's equitable claims do not raise
questions of "construction or validity arising under the instruments." See id. By all
accounts the instruments in the record are valid; the benefit that Bobby received from the
release of lien is the central issue. Therefore, the equitable claims cannot utilize the UDJA. 
Morales, 869 S.W.2d at 947. 

 Of Homecomings's three causes of actions, only one - breach of express contract
- can be resolved using the UDJA. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001 et.
seq. Our analysis of the attorney's fee award moves to the breach of contract claim,
because that is the only pleaded claim that could sustain an award of attorney's fees. See
id. §§ 37.009, 38.001(8).

E. Breach of Contract

 Homecomings's summary judgment motion and its supporting affidavit fail to outline
the elements of a breach of contract claim, summarily assert Bobby's breach of Note 1 (the
express contract in question), and state, without justification, that the damages stemming
from Bobby's alleged breach are the misapplied funds and the erroneously refunded
escrow account. The elements for a breach of express contract claim are: (1) a valid
contract, (2) the plaintiff performed or tendered performance; (3) the defendant breached
the contract, and (4) the plaintiff was damaged as a result of the breach. Keszler v. Mem'l
Med. Ctr. of E. Tex., 105 S.W.3d 122, 128 (Tex. App-Corpus Christi 2003, no pet.). 

 At the trial court, Bobby contested the breach and injury elements of the breach of
contract claim. See Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial
court by written motion, answer or other response shall not be considered on appeal as
grounds for reversal."). In his first amended answer, Bobby claims he attempted to pay
Homecomings the monthly mortgage payment, but his attempts to pay were refused
because at the time Homecomings's records showed that Note 1 was paid. 

 Assuming that the first two elements of a breach of contract claim are satisfied, the
record before us does not establish as a matter of law the last two elements. With regard
to the breach of contract element, Homecomings implicitly argues that since the payment
provisions of Note 1 begin with the singular pronoun "I," as in "I promise to pay," Bobby
breached those provisions by allowing Note 1 to be paid off by the financing arranged by
Charlotte through Bank of America. In essence, Homecomings asks that its misapplication
of the Bank America check be construed as a breach on Bobby's part. However, Bobby's
first amended answer asserts that he attempted to pay, thereby raising a fact issue
concerning the breach element. 

 Additionally, Homecomings fails to show how Bobby's alleged breach caused an
injury. See Southwell v. Univ. of the Incarnate Word, 974 S.W.2d 351, 354-55 (Tex.
App.-San Antonio 1988, writ denied)(stating that to prove an action for breach of contract,
the plaintiff must establish the defendant's breach caused injury). The normal measure
of damages in a breach of contract case is the benefit-of-the-bargain measure. Abraxas
Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 760 (Tex. App.-El Paso 2000, no pet.). This
measure seeks to restore the injured party to the economic position it would have been in
had the contract been performed. The release of lien coupled with Bobby's assertion that
a Homecomings employee told him Note 1 was paid is evidence that Homecomings
received the benefit-of-the-bargain, a satisfied note.

 Viewing the evidence in the light most favorable to Bobby, Keszler, 105 S.W.3d at
128, we conclude that there is more than a scintilla of evidence to raise a fact issue with
regard to the breach and injury elements of Homecomings's breach of contract claim. 
Therefore, the trial court could not have granted summary judgment based on a breach of
express contract claim. 

F. Attorney's Fees

 The breach of contract claim was the only underlying controversy in Homecomings's
summary judgment motion that could have supported an award for attorney's fees. Tex.
Civ. Prac. & Rem. Code Ann. §§ 37.009, 38.001(8). The trial court should not have
awarded attorney's fees because it could not have granted summary judgment on an
underlying controversy within the scope of sections 37.004 or 38.001(8) of the civil practice
and remedies code. Kadish, 948 S.W.2d at 304. Bobby's second issue is sustained.

III. CONCLUSION

 The trial court's judgment against Bobby for $37,618.49 is affirmed based upon
Homecoming's claim for money had and received. Tex. R. App. P. 43.2(a). The remaining
aspects of the trial court's judgment are reversed and the case is remanded for further
proceedings consistent with this opinion. Id. at rule 43.2(d). 

 _______________________

 ROGELIO VALDEZ

 Chief Justice


Opinion delivered and filed 

this the 2nd day of November, 2006.
1. For easy reference, Bobby R. Doss will be referred to as Bobby and Charlotte Doss will be referred
to as Charlotte. 
2. Note 1 was assigned to Bankers Trust Company, who is the legal owner and holder of the note.
3. Homecomings is the legal owner and holder of Note 2.
4. Unjust enrichment, however, is not an independent cause of action but rather characterizes the
result of a failure to make restitution of benefits either wrongfully or passively received under circumstances
which give rise to an implied or quasi-contractual obligation to repay. City of Corpus Christi v. Heldenfels
Bros., 802 S.W.2d 35, 40 (Tex. App.-Corpus Christi 1990), aff'd, 832 S.W.2d 39 (Tex. 1992). The doctrine
applies the principles of restitution to disputes where there is no actual contract, based on the equitable
principle that one who receives benefits which would be unjust for him to retain ought to make restitution. 
Oxford Fin. Cos. v. Velez, 807 S.W.2d 460, 465 (Tex. App.-Austin 1991, writ denied). Thus, an action for
money had and received is a doctrine applied to prevent unjust enrichment. London v. London, 192 S.W.3d
6, 13 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). Thus, there are really only three causes of action
in the instant case.